UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| XUAN GONG, | ) | CASE NO.: 4:26-cv-00488 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| MARKWAYNE MULLIN, Secretary, U.S. | ) | **MEMORANDUM OPINION** |
| Department of Homeland Security, *et al.*, | ) | **AND ORDER** |
| | ) | |
| Respondents. | ) | |

Before the Court is Petitioner Xuan Gong's ("Petitioner") Petition for Writ of Habeas

Corpus under 28 U.S.C. § 2241 ("Petition") and Complaint for Emergency Injunctive Relief.

(Doc. 1.)  Respondents are Markwayne Mullin, Secretary of the United States Department of

Homeland Security; Kevin Raycraft, Field Office Director of the Cleveland Field Office for

Immigration and Customs Enforcement ("ICE")[1]; and Ed Voorhies, Warden of Northeast Ohio

Correctional Center (together "Respondents").  (*Id.*)  Respondents opposed the Petition and its

request for emergency injunctive relief.  (Doc. 4.)  Petitioner replied.  (Doc. 5.)  For the reasons

below, the Petition for Writ of Habeas Corpus is GRANTED.

I.      **BACKGROUND**

Petitioner is a native and citizen of the People's Republic of China.  (Doc. 1 at 4, ¶ 21.)[2]

In August 2023, Petitioner entered the United States without inspection.  (*Id.* at 4, ¶ 22.)  Upon

---

[1] Since the filing of the Petition, Markwayne Mullin has replaced Kristi Noem as the Secretary of the Department of Homeland Security and Kevin Raycraft has replaced Robert Lynch as the ICE Field Office Director for the Cleveland Region.  Pursuant to Rule 25(d), which automatically substitutes successors as a party, Secretary Mullin and Director Raycraft are now named in this action.

[2] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

entry, he was detained.  (*Id.* at 4, ¶ 23.)  At the time of his initial detention, the government

began removal proceedings, issued Petitioner a Notice to Appear, and placed him in the

Alternative to Detention Program.  (Doc. 4-2 at 60; Doc. 4-3 at 64.)  Petitioner was released from

custody and instructed to report to the local ICE office.  (Doc. 4-3 at 64.)  In October 2023,

Petitioner filed an application for asylum.  (*Id.*)

On February 12, 2026, Petitioner reported to his local ICE office.  (*Id.* at 65.)  At that

time, ICE redetermined Petitioner's custody status and detained him.  (*Id.*)  Petitioner has been

detained at the Northeast Ohio Correctional Center pending the outcome of his removal

proceedings.  (Doc. 1 at 4, ¶ 26.)

Petitioner's custody status was redetermined after a change in the agency's longstanding

interpretation of which noncitizens can be released on bond and which are subject to mandatory

detention.  (*Id.* at 5, ¶ 29.)  Before July 8, 2025, noncitizens in the United States were viewed as

being subject to Section 1226, which allows for bond hearings and the potential for release

during the pendency of removal proceedings.  Since July 8, 2025, noncitizens in the United

States are viewed as being subject to Section 1225, which mandates detention during removal

proceedings in nearly every instance with no bond hearing.

Petitioner seeks a writ of habeas corpus, arguing that continued detention violates the

Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment.

(Doc. 1 at 17-20, ¶¶ 63-78.)  Respondents' urge recognition of its determination that Petitioner is

properly subject to mandatory detention pursuant to Section 1225.

II.     **ANALYSIS**

Any "individual detained within the United States" may seek a writ of habeas corpus.

*Hamdi v. Rumsfeld*, 542 U.S. 507, 525, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004) (citing U.S.

Const., Art. I, § 9, cl. 2).  Habeas relief is available where a person's custody violates "the

Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

### A.      Jurisdiction

Federal courts have jurisdiction to issue writs of habeas corpus to persons detained in the

United States.  *Hamdi*, 542 U.S. at 525.  This includes noncitizens in immigration matters, with

few limited exceptions.  *Zadvydas v. Davis*, 533 U.S. 678, 687, 121 S. Ct. 2491, 150 L. Ed. 2d

653 (2001).  Respondents argue Congress limited jurisdiction under two provisions of the INA:

Sections 1252(g) and 1252(b)(9).  (Doc. 4 at 39-43.)

### 1.      Section 1252(g)

Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law
> (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas
> corpus provision, and sections 1361 and 1651 of such title, no court shall have
> jurisdiction to hear any cause or claim by or on behalf of any alien arising from the
> decision or action by the Attorney General to commence proceedings, adjudicate
> cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  This "provision limits review of cases 'arising from' decisions [of the

Attorney General] 'to commence proceedings, adjudicate cases, or execute removal orders.'"

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 19, 140 S. Ct. 1891, 207 L. Ed.

2d 353 (2020).  Section 1252(g) does not cover "all claims arising from deportation

proceedings," nor does it impose "a general jurisdiction limitation."  *Id.* (quoting *Reno v. Am.-*

*Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 119 S. Ct. 936, 142 L. Ed. 2d 940 (1999)).

The "arising from" language in the statute "refer[s] to just those three specific actions" listed,

that being "commence proceedings, adjudicate cases, or execute removal orders."  *Jennings v.*

*Rodriquez*, 583 U.S. 281, 294, 138 S. Ct. 830, 200 L. Ed. 2d 122 (2018).

Consistent with this precedent, district courts have jurisdiction over "detention-based

claims" "independent" from "removal-based claims." *Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018). In *Hamama*, the Sixth Circuit found Section 1252(g) prohibited a district court from exercising jurisdiction over habeas petitions challenging the removal action itself but did not bar a district court from considering "detention-based claims" raised in the petition, *e.g.*, a request for a bond hearing. *Id.*; *see also Elgharib v. Napolitano*, 600 F.3d 597, 605 (6th Cir. 2010) (habeas petition would not be barred if the "petition raised a challenge that did not require the district court to address the merits of her order of removal").

To Respondents, Section 1252(g) "categorically bars jurisdiction" because "[t]he Secretary of Homeland Security's decision to *commence removal proceedings*, includes the decision to detain an alien pending such removal proceedings." (Doc. 4 at 39.) Petitioner argues otherwise. (Doc. 5 at 70-71.) To him, Respondents' argument contradicts the Supreme Court holding that Section 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions" in the statute. (*Id.* (citing *Jennings*, 583 U.S. at 294).)

Courts must be careful not to conflate detention proceedings and removal proceedings, to do so would ignore *Regents of Univ. of Cal.* and *Jennings*. To be sure, Section 1252(g) denies jurisdiction to review prosecutorial decisions in the removal process, including (1) who should be removed, (2) the bases on which to pursue removal, and (3) the manner of removal. *Coronado v. Sec'y of Dep't of Homeland Sec.*, No. 25-cv-831, 2025 WL 3628229, 2025 U.S. Dist. LEXIS 258690, at *8 (S.D. Ohio Dec. 15, 2025). A challenge to whether a detainee can be held without a bond hearing, however, does not fall into the statutory exclusion.

District courts in this Circuit have overwhelmingly reached the same conclusion. *See, e.g.*, *E.V. v. Raycraft*, No. 25-cv-2069, 2025 WL 3122837, 2025 U.S. Dist. LEXIS 220483, at *10-11 (N.D. Ohio Nov. 7, 2025); *Lopez v. Noem*, No. 26-cv-128, 2026 WL 395202, 2026 U.S.

Dist. LEXIS 29036, at *2-3 (N.D. Ohio Feb. 12, 2026); *Singh v. Stevens*, No. 26-cv-133, 2026

WL 456489, 2026 U.S. Dist. LEXIS 32574, at *2 (N.D. Ohio Feb. 18, 2026); *Coronado*, 2025

WL 3628229, 2025 U.S. Dist. LEXIS 258690, at *7; *Del Villar v. Noem*, No. 25-cv-137, 2025

WL 3231630, 2025 U.S. Dist. LEXIS 227575, at *4 (W.D. Ky. Nov. 19, 2025); *Fuentes v.*

*Olson*, No. 25-cv-1634, 2025 WL 3649563, 2025 U.S. Dist. LEXIS 261058, at *5 (W.D. Mich.

Dec. 17, 2025); *Cortez v. Lynch*, No. 25-cv-822, 2026 WL 82039, 2026 U.S. Dist. LEXIS 5272,

at *7-8 (S.D. Ohio Jan. 12, 2026); *Ramirez v. Lynch*, No. 25-cv-1408, 2025 WL 3267771, 2025

U.S. Dist. LEXIS 230745, at *5-6 (W.D. Mich. Nov. 24, 2025).

While Respondents cite a collection of cases allegedly holding otherwise, those cases

involve blended challenges entirely distinct from the limited Petition here, which challenges only

his right to a bond hearing.  (Doc. 4 at 39.)  In *Alvarez*, the habeas petition challenged "the

methods that ICE used to detain him," specifically, that he was "detained by means of

misrepresentations and disregard for the Department of Justice's commitment in his plea

agreement."  *Alvarez v. ICE*, 818 F.3d 1194, 1204 (11th Cir. 2016).  Here, Petitioner challenges

whether detention is mandatory under Section 1225.  In *Tazu*, thepetitioner challenged a removal

order and the manner of his removal.  *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 298 (3d Cir. 2020).

Such a challenge is not presented here.

### 2. Section 1252(b)(9)

Respondents' reliance on Section 1252(b)(9) to assert a jurisdictional limit fails for

similar reasons.  Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and
> application of constitutional and statutory provisions, arising from any action taken
> or proceeding brought to remove an alien from the United States under this
> subchapter shall be available only in judicial review of a final order under this
> section. Except as otherwise provided in this section, no court shall have
> jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas

corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).  This section "bars review of claims arising from "action[s]" or "proceeding[s] brought to remove an alien." *Regents of Univ. of Cal.*, 591 U.S. at 19.  "[Section] 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'"  *Id.* (quoting *Jennings*, 583 U.S. at 294).  Put simply if "the parties are not challenging any removal proceedings," Section 1252(b)(9) does not apply.  *Id.*

*Jennings* resolves Respondents' argument on this point, and other courts have reached the same conclusion.  *See, e.g.*, *E.V.*, 2025 WL 3122837, 2025 U.S. Dist. LEXIS 220483, at *14 ("Numerous district courts have rejected similar arguments asserting that § 1252(b)(9) bars review concerning legality of detention under §§ 1225 and 1226."); *Edahi v. Lewis*, No. 25-cv-129, 2025 WL 3466682, 2025 U.S. Dist. LEXIS 233006, at *5 (W.D. Ky. Nov. 27, 2025) (same); *Coronado*, 2025 WL 3628229, 2025 U.S. Dist. LEXIS 258690, at *7 (same); *Aranda v. Olson*, No. 25-cv-156, 2025 WL 3499061, 2025 U.S. Dist. LEXIS 251386, at *5 (W.D. Ky. Dec. 5, 2025) (collecting cases); *Rodriquez v. Woosley*, No. 25-cv-168, 2026 WL 36345, 2026 U.S. Dist. LEXIS 1485, at *5 (W.D. Ky. Jan. 6, 2026) (same); *Resendiz v. Noem*, No. 25-cv-159, 2025 WL 3527284, 2025 U.S. Dist. LEXIS 254523, at *4 (W.D. Ky. Dec. 9, 2025) (same); *Guerra v. Noem*, No. 25-cv-1341, 2025 WL 3204289, 2025 U.S. Dist. LEXIS 225782, at *12 (W.D. Mich. Nov. 17, 2025) (same); *Ochoa v. Noem*, No. 25-cv-10865, 2025 WL 2938779, 2025 U.S. Dist. LEXIS 204142, at *7 (N.D. Ill. Oct. 16, 2025) (same).

While Respondents rely on *Khalil v. President of the United States*, 164 F.4th 259 (3d Cir. 2026), to demonstrate how the above-cited district court decisions misconstrued Section

1252(b)(9), that reliance is misplaced. *Khalil* involved a habeas petition challenging detention, removal, and a "broad array" of government misconduct. *Id.* at 276. The Third Circuit found Section 1252(b)(9) stripped the district court of jurisdiction because the claims were not "wholly collateral to the removal process," and instead, were "inextricably linked" to the removal proceedings. *Id.* at 274. That is, the petition challenged the legality of the detention *and* removal. *Id.* *Khalil* would be more persuasive if Petitioner were making the same sort of blended challenge. But here, he is simply challenging mandatory detention without a bond hearing. He is not bringing any challenge to his removal proceedings. Thus, *Khalil* is inapposite.

### B.      Exhaustion of Administrative Remedies

If no statute or procedure mandates administrative exhaustion, the decision whether to require exhaustion is within the district court's "sound judicial discretion." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). This is called "prudential" exhaustion, and courts considering its application must consider and comply with the applicable statutory scheme and Congress' intent to prioritize an agency's unique experience in a given area. *Id.*; *see also Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019).

The Sixth Circuit has not addressed prudential exhaustion when a petitioner challenges mandatory detention pursuant to Section 1225. *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, 2025 U.S. Dist. LEXIS 175767, at *7 (E.D. Mich. Sep. 9, 2025). It has, however, recognized in other contexts that prudential exhaustion should not be required "when the administrative remedy does not serve the purposes behind the exhaustion doctrine, if the administrative remedies are inadequate or not efficacious, [] where pursuit of administrative remedies would be a futile gesture, [or] in cases of non-frivolous constitutional challenges to an

agency's procedures." *Id.* (citing *Bangura v. Hansen*, 434 F.3d 487, 493 (6th Cir. 2006)).

In addressing habeas petitions like the one here, district courts have largely looked to out-of-circuit decisions for additional guidance, with many applying a three-part test recognized by the Ninth Circuit:

> 1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> 2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> 3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (E.D. Mich. 2025) (citing *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983)); *see also Fuentes*, 2025 WL 3649563, 2025 U.S. Dist. LEXIS 261058, at *7-8.

Some courts dismissed petitions on exhaustion grounds in similar circumstances. *See Monroy Villalta v. Greene*, 794 F. Supp. 3d 528, 530-31 (N.D. Ohio 2025) (holding with respect to Section 2241 petition raising Fifth Amendment and INA claims that "prudential principles of exhaustion counsel that Petitioner pursue his administrative remedies before seeking a writ of habeas corpus"); *Mendoza v. Raycraft*, No. 25-cv-2183, 2025 WL 3157796, 2025 U.S. Dist. LEXIS 222293, at *33-36 (N.D. Ohio Nov. 12, 2025) (finding all prudential exhaustion factors weigh in favor of requiring exhaustion and refusing to waive exhaustion requirement because it would not be futile). Others have not required exhaustion. *See Lopez-Campos*, 797 F. Supp. 3d at 778-79 (holding with respect to Section 2241 petition raising Fifth Amendment and INA claims that all prudential exhaustion factors weigh in favor of not requiring exhaustion, and, even if they did, the exhaustion requirement should be waived under these circumstances); *Puerto-Hernandez v. Lynch*, 808 F. Supp. 3d 802, 814 (W.D. Mich. 2025) (finding all prudential

exhaustion factors weigh against requiring exhaustion because issue presented is purely legal (*i.e.*, no need to develop the record), raises constitutional due process issues that cannot be remedied by administration, and appeal would be futile); *Martinez-Elvir v. Olson*, 807 F. Supp. 3d 725, 734-35 (W.D. Ky. 2025) (collecting cases where waiting for appeal to BIA would be futile); *Ramirez*, 2025 WL 3267771, 2025 U.S. Dist. LEXIS 230745, at *9 (concluding prudential exhaustion should not be required). From a review of the applicable case law, the majority position is to not require exhaustion and to waive the requirement even if it should apply.

Recognizing that reasonable jurists have reached different conclusions, the Court finds the three listed factors all weigh against requiring exhaustion for several reasons. First, there is no need to "generate a proper record" as the issues raised in the Petition present matters of statutory construction. As recognized in *Loper Bright*, "the judiciary is the final authority on issues of statutory construction" and courts "need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 401, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024).

Second, after considering all arguments presented and the record here, the Court cannot find that relaxing exhaustion requirements "would encourage the deliberate bypass of the administrative scheme." Detention challenges sounding in the deprivation of a constitutional right are not proper matters for agency determination. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006); *see also Martinez-Elvir*, 807 F. Supp. 3d at 734 ("because the BIA cannot review constitutional challenges, due process challenges typically do not require exhaustion"); *Ramirez*, 2025 WL 3267771, 2025 U.S. Dist. LEXIS 230745, at *9-10 ("due process challenges, such as the one raised by Petitioner,

which are not premised on correctable procedural errors, generally do not require exhaustion").

Finally, it is unlikely that administrative review will result in a reclassification of Petitioner's status as a mandatory detainee.  There is no information presented that suggests the BIA will reverse course from its interpretation of Section 1225 or its position in *Matter of Q. Li*, 29 I&N Dec. 66, 69 (BIA 2025).  *See Martinez-Elvir*, 807 F. Supp. 3d at 734 ("It is far from clear that any administrative review would result in Respondents changing its position"); *Puerto-Hernandez*, 808 F. Supp. 3d at 814 ("the BIA recently proclaimed that any individual who has ever entered the United States unlawfully and was later detained is no longer eligible for bond and is subject to mandatory detention under § 1225(b)(2)(A)").

Even if the prudential exhaustion factors weighed differently, this Court would still waive it here because the "legal question is fit for resolution and delay means hardship" or exhaustion would otherwise be futile.  As stated above, Petitioner challenges the constitutionality of his mandatory detention without so much as a bond hearing under the Fifth Amendment's Due Process Clause and the agency's interpretation of Sections 1225 and 1226.  These challenges fall uniquely to the courts.  *Martinez-Elvir*, 807 F. Supp. 3d at 734-35.  Delay would certainly present a hardship, one that is unnecessary when all that is required is a proper bond hearing.  As for general futility, while the Court recognizes that other courts have required exhaustion, Respondents' arguments here and its reliance on the BIA determination in *Matter of Q. Li*, clearly demonstrate that agency procedures would be futile.  Simply stated, the agency's entrenched position that any noncitizen present in this country without lawful permissions cannot receive a bond hearing and are subject to mandatory detention for an undetermined period of time is unlikely to change during any agency appeal process.  This is the very definition of futile. *See Lopez-Campos*, 797 F. Supp. 3d at 779 ("[b]ond appeals before the BIA, on average, take six

months to complete"); *Martinez-Elvir*, 807 F. Supp. 3d at 734 (collecting cases and concluding "the 'delays inherent' in the BIA's administrative process 'would result in the very harm that the bond hearing was designed to prevent,' as it would cause Petitioner's prolonged detention without due process").

For all of the foregoing reasons, the Court will not require prudential exhaustion.

**C.      INA Claim: Sections 1226(a) and 1225(b)(2)(A)**

The central question is whether Petitioner should be classified under Section 1226(a), as he asserts, or Section 1225(b)(2)(A), as Respondents argue.  (Doc. 1 at 10-11, ¶¶ 45-46; Doc. 4 at 44.)  The difference is meaningful.  Under Section 1225(b)(2)(A), Petitioner's detention is mandatory.  Under Section 1226(a), Petitioner is afforded a proper bond hearing and may be released pending removal proceedings.  8 U.S.C. § 1226(a).  Because Respondents' interpretation of Section 1225 runs counter to well established canons of statutory construction, their contention that Section 1225(b)(2)(A) authorizes Petitioner's detention without a bond hearing lacks merit.

The "starting point" for any statutory interpretation question "is the statutory text." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003); *see also J. B-K. by E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 48 F.4th 721, 726 (6th Cir. 2022).  The Court "must give effect to the clear meaning of statutes as written."  *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414, 137 S. Ct. 1002, 197 L. Ed. 2d 354 (2017); *see also Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022).  The words in the statute are given their "ordinary, contemporary, [and] common meaning" while also being assessed in context with the remaining statutory language.  *Biden*, 23 F.4th at 603 (citations and quotations omitted).

Section 1225(a)(1) defines "an applicant for admission" as an "alien present in the United

States who has not been admitted or who arrives in the United States[.]"  Section 1225(b)(2)(A)

states: "in the case of an alien who is an applicant for admission, if the examining immigration

officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to

be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  In this

way, three things must be demonstrated for Section 1225(b)(2)(A) to apply: the person must be

(1) "an applicant for admission"; (2) "an alien seeking admission"; and (3) "not clearly and

beyond a doubt entitled to be admitted."

 An "applicant for admission" is defined in Section 1225(a)(1).  An "alien seeking

admission" is not defined anywhere in the INA.  Respondents urge that every "applicant" is also

"seeking admission."

This argument is unpersuasive.  First, for Section 1225(b)(2)(A) to apply, Respondents

must show that the person is "an applicant for admission."  If demonstrated, Respondents must

then show the person is also "seeking admission."  For the Court to be persuaded by

Respondents' assertion that these two considerations are one in the same would require it to

disregard its own mandate to give effect to every clause, word, and provision of a statute.  *See*

*TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001) (citing *Duncan*

*v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001)).  The statute plainly

states that two things must be true—the person is an applicant and they are seeking admission.

By its language, Congress has determined an applicant is distinct from someone who may also be

seeking admission.  "The canon against surplusage can be meaningful when a competing

interpretation would avoid superfluity."  *Bufkin v. Collins*, 604 U.S. 369, 387, 145 S. Ct. 728,

221 L. Ed. 2d 192 (2025).  Such is the case here.

Second, Congress' chosen language is also notable.  "Seeking" implies action.  *Lopez-*

*Campos*, 797 F. Supp. 3d at 781.  It suggests something that one is in the process of doing.  *Id.*  Being an applicant is passive.  The action is complete, and the waiting period has begun.

Third, consider the titles chosen for each section.  While titles cannot override plain words in a statute, referring to titles can be "tools available for resolution of a doubt."  *Spurr v. Pope*, 936 F.3d 478, 488 (6th Cir. 2019).  Section 1225 is titled "[i]nspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  The use of "arriving aliens" strongly corroborates that it applies to aliens who are in the act of *arriving* in the United States.  Meanwhile, Section 1226 is titled "[a]pprehension and detention of aliens."  That title appears to apply directly to Petitioner, an alien apprehended and detained alien.  *See Martinez-Elvir*, 807 F. Supp. 3d at 737 (the title's "use of 'arriving aliens' to describe the noncitizens to whom the statute applies strongly suggests that § 1225 pertains to noncitizens first entering the United States."); *see also Reyes*, 2025 WL 2609425, 2025 U.S. Dist. LEXIS 175767, at *13 ("The use of 'arriving' to describe noncitizens strongly indicates that the statute governs the *entrance* of noncitizens to the United States."); *Edahi*, 2025 WL 3466682, 2025 U.S. Dist. LEXIS 233006, at *18 ("'arriving' supports the notion that the statute governs 'arriving' noncitizens, not those present already").

Fourth, the Court's determination here is entirely consistent with *Jennings*.  There, the Supreme Court recognized Section 1226(a) as "the default rule" for "aliens already present in the United States," while Section 1225 is paramount at "the Nation's borders and ports of entry . . . ."  *Id.*  Respondents suggest *Jennings* supports their interpretation because the Supreme Court "did not appear to consider aliens 'seeking admission' to be a subcategory of applicants for admission."  (Doc. 4 at 49.)  This parsing of language would negate the Supreme Court's characterization of Sections 1225 and 1226, namely that Section 1225 applies at the borders and

1226 is the default rule.

Lastly, recent congressional action confirms the Court's interpretation of Section 1225. As the *Martinez-Elvir* court explained, the Laken Riley Act amended portions of the INA to exclude certain aliens from Section 1226 if they had been arrested, charged, or convicted of enumerated crimes.  *Martinez-Elvir*, 807 F. Supp. 3d at 738.  These aliens would have otherwise qualified for a bond hearing under Section 1226.  But to "read § 1226 [as Respondents do] would ignore recent amendments to § 1226 and render Congress' recent actions entirely superfluous, a result that this Court has long been instructed to avoid."  *Rodriquez v. Noem,* 812 F. Supp. 3d 751, 760 (W.D. Mich. 2025).  If every alien in the United States could be detained under Section 1225 and denied a bond hearing, the Act is meaningless.

As explained herein, Petitioner is not subject to mandatory detention under Section 1225(b)(2)(A) and must be afforded a proper bond hearing.

### D.     Due Process

Having resolved the statutory interpretation question the Court need not consider the Due Process challenge.  *See PDK Labs. Inc. v. United States DEA*, 362 F.3d 786, 791 (D.C.C. 2004) ("the cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further") (Roberts, J., concurring).

### E.     Proper Respondents

Respondents assert that in the ICE habeas context, only the Field Office Director for ICE is a proper respondent.  (Doc. 4 at 38 n.1.)  Respondents seek dismissal of the Secretary of the Department of Homeland Security and the Warden for the Northeast Ohio Correctional Center. (*Id.*)  Petitioner disagrees.  (Doc. 5 at 77.)  Because the Warden oversees detention of all immigrants detained at Northeast Ohio Correctional Center, the Warden is an appropriate

respondent.  (*Id.*)  He further argues the Secretary has broad supervision over detentions of noncitizens and is a proper respondent.  (*Id.*)

A writ "shall be directed to the person having custody of the person detained."  28 U.S.C. § 2243.  The "question of who is 'the custodian,' and therefore the appropriate respondent in a habeas suit, depends primarily on who has power over the petitioner and . . . on the convenience of the parties and the court."  *Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2003) (quoting *Henderson v. INS*, 157 F.3d 106, 122 (2d Cir. 1998)).  "As a general rule, a petitioner should name as a respondent to his habeas corpus petition 'the individual having day-to-day control over the facility in which the alien is being detained.'"  *Id.* (quoting *Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000)).

In the immigration enforcement context, "although the warden of each detention facility technically has day-to-day control over alien detainees, the INS District Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners."  *Id.* at 320 (citing *Henderson*, 157 F.3d at 122).  *Roman* left open the possibility of naming additional respondents if "extraordinary circumstances" were present.  *Id.* at 325-27 (explaining "[u]nder certain extraordinary circumstances it may be necessary to depart from the immediate custodian rule in order to preserve a petitioner's access to habeas corpus relief.").

Courts in this Circuit are split on this issue of proper respondents.  *Compare Mendoza*, 2025 WL 3157796, 2025 U.S. Dist. LEXIS 222293, at *18-20 (dismissing Secretary of Department of Homeland Security, Attorney General, and Director of ICE over no objection from petitioner), *with Puerto-Hernandez v. Lynch*, 808 F. Supp. 3d at 821 (applying extraordinary exception and allowing petitioner to named Secretary of Department of Homeland Security and Director of ICE as respondents); *Arredondo-Silva v. Raycraft*, No. 25-cv-13674,

2025 WL 3625781, 2025 U.S. Dist. LEXIS 258798, at *6-7 (E.D. Mich. Dec. 15, 2025) (finding Secretary of Homeland Security and Attorney General were proper respondents because they "are responsible for the directive at issue, the implementation and enforcement of the INA (including the detention and removal of noncitizens), and the immigration court system where Petitioner is being denied bond hearings"); *Paz v. Raycraft*, No. 25-13563, 2025 WL 3473361, 2025 U.S. Dist. LEXIS 253986, at *7 (E.D. Mich. Dec. 3, 2025) (refusing to dismiss Secretary of Homeland Security and Attorney General as respondents). Recognizing this split and considering there is a basis upon which to continue with the named Respondents as parties, the Secretary of Homeland Security and Warden are not dismissed.

**III.   CONCLUSION**

For the reasons stated above, Petitioner Xuan Gong's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) is GRANTED. Respondents are ORDERED to afford Petitioner with a bond hearing consistent with Section 1226 within five (5) days from the date of this Order or release him from custody.

**IT IS SO ORDERED.**

Date:   April 13, 2026

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE